# IN THE DISTRICT COURT OF THE UNITED STATES
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION

## CRIMINAL CASE NO. 3:08cr260

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| | ) | |
| **vs.** | ) | **O R D E R** |
| | ) | |
| | ) | |
| **REGINALD LAMAR DAVIS.** | ) | |
| | ) | |
| _____ | ) | |

**THIS MATTER** is before the Court on the Defendant's Motion to Suppress Evidence [Doc. 7]; the Magistrate Judge's Memorandum and Recommendation [Doc. 12], recommending that the Defendant's Motion to Suppress be granted; the Government's Objections to the Memorandum and Recommendation of the Magistrate Judge [Doc. 17]; the Defendant's Motion to Strike the Government's Objection to Memorandum and Recommendation [Doc. 21]; and the Government's Motion for Leave to File Opposition to Suppression M&R and in Opposition to Motion to Strike [Doc. 23].

## I.    PROCEDURAL HISTORY

On December 17, 2008, the Defendant was charged in a one-count Bill of Indictment with possession of a firearm by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e).  [Doc. 1].  On March 26, 2009, the Defendant filed a Motion to Suppress the evidence of his statements to the police and the firearm seized at the time of his arrest on the grounds that his consent to the search of his vehicle was tainted by an unlawful seizure.  As an additional basis for suppression of his statements, the Defendant argues that he was not administered <u>Miranda</u> warnings until the middle of his custodial interrogation, and therefore his responses to questioning both before and after receiving the warnings are inadmissible.  [Doc. 7].

On April 24, 2009, the Honorable David S. Cayer, United States Magistrate Judge, conducted a suppression hearing and on May 5, 2009, issued a Memorandum and Recommendation that the Motion to Suppress be granted on the grounds that the search of the Defendant's vehicle was unlawful.  [Doc. 12].  The Memorandum and Recommendation advises the parties that "written objections to the proposed findings of fact and conclusions of law and the recommendation contained in this Memorandum must be filed within ten (10) days after service of same."  [Doc. 12 at 12].  The

Government filed its Objections to the Memorandum and Recommendation on May 26, 2009. [Doc. 17].

On May 27, 2009, the Defendant moved for an extension of time to respond to the Government's Objections [Doc. 18], which the Court granted. [Doc. 19]. On June 3, 2009, the Defendant filed his Response to the Government's Objections [Doc. 22], as well as a Motion to Strike said Objections on the grounds that they were not timely filed. [Doc. 21]. While conceding that the Objections were not timely filed, the Government filed a Motion urging the Court to consider its Objections and to deny the Defendant's Motion to Strike. [Doc. 23].

## II.     TIMELINESS OF GOVERNMENT'S OBJECTIONS

Before addressing the Government's Objections to the Magistrate Judge's Memorandum and Recommendation, the Court must first address the Defendant's contention that the Government's Objections should be stricken as being untimely filed.

The Magistrate Judge's Memorandum and Recommendation advises the parties that "written objections to the proposed findings of fact and conclusions of law and the recommendation contained in this Memorandum

must be filed within ten (10) days after service of same." [Doc. 12 at 12]. Accordingly, any objections to the Magistrate Judge's Memorandum and Recommendation were due on May 22, 2009. See Fed. R. Crim. P. 45(a)(2) (computing period of less than 11 days as excluding intermediate weekends and holidays); Fed. R. Crim. P. 45(c) (adding three days for service by electronic means in accordance with Fed. R. Civ. P. 5(b)(2)(E)). A party who fails to file objections by the deadline set by the Court is deemed to have waived such objections unless the party can show good cause for the failure. Fed. R. Crim. P. 12(e). "Relief from the waiver of an objection is appropriate only if the moving party demonstrates cause for the failure to object and actual prejudice resulting from the defect." United States v. Colton, 231 F.3d 890, 909 (4th Cir. 2000).

In the present case, counsel for the Government concedes that its Objections were not timely filed, but states that the delay in filing was due to counsel's difficulties with the ECF filing system and the absence of anyone else in his office who could have assisted him in filing them on the day that they were due. Counsel further points out that, despite the technical difficulties that he incurred in filing the Objections with the Court, a copy of the Objections were timely served on defense counsel by e-mail on May 22, 2009,

and that the Objections were filed with the Court the morning of the next business day, Tuesday, May 26, 2009 (as Monday May 25, 2009 was a federal holiday).  [Doc. 23 at 2-3].

Counsel's technical difficulties with filing the Objections do not appear to have been the result of any technical failure in the ECF filing system. Rather, counsel failed to timely file the Objections because he apparently was insufficiently familiar with the ECF system to file them himself.  As an attorney who has been admitted to practice in this Court, counsel is expected to be capable of filing pleadings on time and in the manner prescribed by the Local Rules.  While an attorney may delegate the filing of pleadings to staff or legal assistants, it is ultimately the attorney's responsibility to ensure that such pleadings are properly and timely filed.  As such, counsel should be sufficiently familiar with the ECF filing procedures so that pleadings may be filed even when one's legal assistants are not available.

Despite counsel's failure to timely file the Objections with the Court, he did timely serve the Defendant's counsel with a copy of the Objections on the day that they were due.  In light of the timely service on the Defendant, and the extension of time granted to the Defendant to respond to these Objections, the Court finds there to be no prejudice to the Defendant by

allowing these Objections. On the other hand, the potential prejudice to the Government by disallowing these Objections would be great, as the Memorandum and Recommendation to which the Government seeks to object recommends the suppression of all the evidence in this case. Thus, this recommendation, if accepted, would likely result in the dismissal of the Government's entire case against the Defendant.

Having provided an explanation for its untimely filing, and in light of the actual prejudice that would result if the Objections were not allowed, the Court concludes that the Government has demonstrated good cause for relief from the waiver of its objections. Accordingly, the Government's Objections will be allowed. To prevent this situation from arising in the future, however, counsel for the Government will be required to take an ECF refresher course through the Clerk of the Court for the Western District of North Carolina and certify the completion of such course to the Court within sixty (60) days.

For the foregoing reasons, the Government's Motion for Leave to File Opposition to Suppression M&R [Doc. 23] is granted, and the Defendant's Motion to Strike Government's Objection to Memorandum & Recommendation [Doc. 21] is denied.

## III. FACTUAL BACKGROUND

### A. Evidence Presented at the Suppression Hearing[1]

On July 9, 2008, Officer Steven Flatt was one of several officers from the Charlotte-Mecklenburg Police Department ("CMPD") involved in a "saturation patrol" of Nations Ford Road in Charlotte, North Carolina. [Tr. at 4-5]. During a saturation patrol, a number of officers patrol a short stretch of road in a high-crime area and stop vehicles for minor traffic violations in order to increase the police's presence in the area. [Id. at 5, 8]. During this patrol, Officer Flatt was accompanied in his vehicle by Officer Joseph Dollar, who was in training at the time. [Id. at 5, 32]. Other CMPD officers, including Officer Charles Bolduc and Sergeant Gary Brown, were nearby in separate police vehicles. [Id. at 5, 8].

Officer Flatt was sitting in his vehicle in a school parking lot when he observed the Defendant drive past. [Id. at 5-6]. Officer Flatt believed that the windows of the Defendant's vehicle were too darkly tinted, and he undertook to stop the Defendant for having an illegal window tint. [Id. at 6]. Officers

___

[1]In reciting the factual background, the Court relies upon its review of the transcript of the April 24, 2009 suppression hearing (cited herein as "Tr."); the mobile video recording ("MVR") of the traffic stop, which was entered into evidence during the suppression hearing as Government's Exhibit 1; and the traffic citation issued to the Defendant, which was entered into evidence during the suppression hearing as Defendant's Exhibit 2.

Flatt and Dollar pulled out of the parking lot and pulled in behind the Defendant's vehicle to effectuate the traffic stop.  [Id. at 6, 32].  Officer Buldoc followed Officer Flatt's vehicle.  [Id. at 6].

The Defendant pulled into a gas station parking lot in response to the officers' blue lights, and the officers approached the Defendant's vehicle.  [Id.].  Officer Bolduc performed a tint reading with a tint meter and determined that the vehicle's window tint was in violation of North Carolina law.  [Id. at 6, 41].  After Officer Dollar obtained the Defendant's license and registration, Officer Dollar and Officer Flatt returned to the police vehicle to check the Defendant's license.  [Id. at 6].  After learning that the Defendant's license was suspended, Officer Dollar began preparing a citation for driving with a suspended license.  [Id.].  Because Officer Dollar was in training, the writing of the citation took longer than it normally would have for a more seasoned officer, but still only took a matter of a few minutes.  [Id. at 7].  While Officer Dollar was completing the citation, Officer Flatt briefly returned to the Defendant's vehicle in order to explain to him that he was going to receive a citation for driving with a suspended license and not for the window tint.  [Id.].

During the stop, Sergeant Brown pulled up and told Officer Flatt that he had observed the Defendant's vehicle and the Defendant "hanging out" earlier

that day at the nearby Oak Park apartment complex, an area known for criminal activity.  [Id. at 8-9, 49-50].

After Officer Dollar completed writing the citation, Officer Flatt and Officer Dollar returned to the Defendant's vehicle with the citation, and Officer Flatt asked him to step out of the vehicle.  [Id. at 8].  Officer Flatt explained that he did this so that he could explain the citation to the Defendant and so that he could ask for his consent to search the vehicle.  After the Defendant got out of the vehicle, Officer Flatt asked the Defendant for his consent to search the vehicle.  The Defendant agreed.  As Officer Dollar began searching the vehicle, Officer Flatt handed the Defendant the citation, pointed out the court date, and asked the Defendant whether he had any further questions about it.  [Id.].

The Defendant was extremely cooperative during the search.  [Id. at 9]. At one point, Officer Dollar had trouble opening the glove box.  The Defendant told the officers that there was a trick to opening it, and he opened it for them. [Id. at 10, 35].  The Defendant also engaged in small talk with the officers.  At one point, Officer Flatt asked the Defendant whether there were any weapons or drugs in the car, and the Defendant said there were not.  Officer Flatt then asked for consent to search the Defendant's person, and the Defendant

9

consented.  [Id. at 10].  During the search of the Defendant's person, officers discovered approximately $1,600 in cash.  [Id. at 13, 42].

During the search of the vehicle, Officer Dollar found a small bag of marijuana.  [Id. at 10].  After discovering the marijuana, Officer Dollar alerted Officer Flatt, who took over searching the vehicle.  [Id. at 10-11].  Officer Flatt subsequently found a larger bag of marijuana and a handgun in the center console of the vehicle.  At that time, Officer Flatt returned to the rear of the vehicle and placed the Defendant under arrest.  [Id. at 11].  While placing the Defendant in handcuffs, Officer Flatt said, "Why didn't you just tell me about the gun in the car?"  [Id. at 12-13].  The Defendant replied that he had not told Officer Flatt about the gun because he was a convicted felon.  Officer Flatt then advised the Defendant of his Miranda rights.   [Id. at 13].  The Defendant stated that he understood his rights and subsequently consented to further questioning, in response to which he made additional incriminating statements.  [Id. at 11-12, 13, 44-46].

## B.  The Magistrate Judge's Findings

While finding that the initial stop of the Defendant's vehicle, the license check, and the issuance of a citation for a suspended license were all valid actions, the Magistrate Judge concluded that the officers lacked reasonable

suspicion to continue to detain the Defendant in order to request his consent to search his vehicle.  [Doc. 12 at 5, 10-11].  Given that the traffic stop had not yet concluded when the officers sought the Defendant's consent to search, the Magistrate Judge concluded that the stop was not a consensual encounter and that the search could therefore not be justified by the Defendant's purported consent.  [Id. at 8, 11].  Accordingly, the Magistrate Judge concluded that the search of the Defendant's vehicle was unconstitutional, and therefore recommended the suppression of the evidence seized from the vehicle, as well as the subsequent statements made by the Defendant regarding the firearm and his status as a convicted felon.  [Id. at 11].

## IV.    STANDARD OF REVIEW

Having determined that the Government's Objections to the Memorandum and Recommendation should not be stricken for untimeliness, the Court reviews *de novo* the particular recommendation to which objections have been filed.  Fed. R. Crim. P. 59(b)(3).  Where no objection is made, however, the Court need " 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  Diamond v.

<u>Colonial Life & Accident Ins. Co.</u>, 416 F.3d 310, 315 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72, 1983 advisory committee note).

## IV.   DISCUSSION

The Government objects to the Magistrate Judge's recommendation that the evidence in this case be suppressed, arguing that the Defendant's detention was no longer than necessary than to complete an ordinary traffic stop, and that the Defendant voluntarily gave his consent to extend the stop, thereby making the search a consensual encounter.   As such, the Government contends, the officers' conduct in this case did not violate the Fourth Amendment. [Doc. 17 at 7].

### A.   The Search of the Defendant's Vehicle

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV.  The temporary detention of individuals during a traffic stop constitutes a "seizure" of "persons" within the meaning of the Fourth Amendment, and therefore, the stop of an automobile is "subject to the constitutional imperative that it not be 'unreasonable' under the circumstances."  <u>Whren v. United States</u>, 517 U.S. 806, 809-10, 116 S.Ct.

1769, 135 L.Ed.2d 89 (1996); Delaware v. Prouse, 440 U.S. 648, 653, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979).

As a general rule, "the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." Whren, 517 U.S. at 810, 116 S.Ct. 1769. Because an ordinary traffic stop is more like an investigative detention than a custodial arrest, the courts employ the analysis for investigative detentions set forth in Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), to determine the proper scope of a routine stop. United States v. Rusher, 966 F.2d 868, 875 (4th Cir. 1992). During a routine traffic stop, an officer "may request a driver's license and vehicle registration, run a computer check, and issue a citation." Id. at 876-77. "[O]nce the driver has demonstrated that he is entitled to operate his vehicle, and the police officer has issued the requisite warning or ticket, the driver 'must be allowed to proceed on his way.'" United States v. Branch, 537 F.3d 328, 336 (4th Cir. 2008) (quoting Rusher, 966 F.2d at 876), cert. denied, 129 S.Ct. 943, 173 L.Ed.2d 142 (2009). "Any further investigative detention . . . is beyond the scope of the Terry stop and therefore illegal unless the officer has a reasonable suspicion of a serious crime *or the individual consents to the further detention*." United States v. Farrior, 535

F.3d 210, 217 (4th Cir.) (internal quotation marks and citations omitted), <u>cert.</u> <u>denied</u>, 129 S.Ct. 743, 172 L.Ed.2d 740 (2008) (emphasis added).

In the present case, the parties do not dispute the constitutionality of the initial traffic stop. Officer Flatt had reasonable suspicion, if not probable cause, to believe that a traffic violation had occurred, as he had observed that the windows of the Defendant's vehicle were too darkly tinted to comply with North Carolina law. Once the Defendant was pulled over, Officer Dollar properly requested the Defendant's license and registration. A computer check of the Defendant's license revealed that it had been suspended, and therefore, a citation was prepared citing the Defendant for driving with a suspended license in violation of North Carolina law. As the Magistrate Judge noted, "[a]ll of these actions were valid within the proper investigative scope of a routine traffic stop." [Doc. 12 at 5].

The parties also do not dispute the Magistrate Judge's finding that there was no reasonable suspicion to justify the Defendant's continued detention once the traffic citation had been completed. [<u>See</u> Doc. 12 at 10-11]. The record supports the Magistrate Judge's finding in this regard. The only evidence that would support a finding of reasonable suspicion of criminal activity was Sergeant Brown's prior observation of the Defendant's vehicle in

the parking lot of a nearby apartment complex, an area which was known for criminal activity.  A suspect's presence in a high crime area, however, without more, is not sufficient to constitute reasonable suspicion.  Illinois v. Wardlow, 528 U.S. 119, 124 (2000).  Absent any other articulable facts to support a finding of reasonable suspicion, the continuation of the traffic stop cannot be justified on this basis.

In the absence of any reasonable suspicion, the validity of the Defendant's continued detention thus depends on the Defendant's purported consent to extend the duration of the stop.  The Magistrate Judge rejected the Government's contention that the search was the product of a consensual encounter, noting that the totality of the circumstances surrounding the encounter indicated that a reasonable person in the Defendant's position would not have felt free to leave to terminate the encounter.  [Doc. 12 at 7-8]. In so concluding, the Magistrate Judge distinguished a line of cases wherein the Fourth Circuit held that a search performed after the conclusion of a routine traffic stop was a consensual encounter that did not implicate the Fourth Amendment.  See Farrior, 535 F.3d at 218; United States v. Meikle, 407 F.3d 670, 673 (4th Cir. 2005); United States v. Sullivan, 138 F.3d 126, 133 (4th Cir. 1998); Rusher, 966 F.2d at 877.

The facts of <u>Meikle</u> are typical of the facts of these cases. In <u>Meikle</u>, the officer initiated a traffic stop of the defendant's vehicle after observing him weaving over the white fog line several times. 407 F.3d at 671. The officer requested the defendant's license and registration and ran a computer check, which came back negative. The officer completed a warning citation for the weaving violation, returned the defendant's license and registration, and shook the defendant's hand. As the defendant began walking back to his car, the officer asked him if he could talk to him again, and the defendant agreed. <u>Id.</u> The officer asked him if there were any illegal drugs in the vehicle, and the defendant said there was not. The officer then asked for permission to search the vehicle, and the defendant consented. <u>Id.</u> at 671-72. During the search, the officer discovered approximately three kilograms of heroin in the car. <u>Id.</u> at 672.

On appeal, the defendant argued that the search was unlawful because the officer had exceeded the bounds of a lawful traffic stop. The Fourth Circuit rejected the defendant's argument, reasoning that the traffic stop had become consensual by the time that the defendant had consented to the search of his vehicle and thus the Fourth Amendment was not implicated by the encounter:

> The officer had returned Meikle's license and
> registration, had shaken Meikle's hand, and Meikle
> began walking back to his car. It was clear that
> Meikle was free to go. A reasonable person would
> have felt free to decline [the officer's] request to
> speak to Meikle further. Therefore, a consensual
> encounter commenced the moment the officer asked
> if he could speak to Meikle again and Meikle agreed.

Id. at 673.

The Magistrate Judge was correct in finding these cases distinguishable from the present case. In each of the cases decided by the Fourth Circuit, the traffic stop had concluded: the defendant's license had been returned, a citation was issued, and the defendant was free to leave the scene. See Farrior, 535 F.3d at 218; Meikle, 407 F.3d at 673; Sullivan, 138 F.3d at 133; Rusher, 966 F.2d at 877. By contrast, the traffic stop in the instant case had not concluded; the Defendant had not yet received his citation and thus was not free to leave the scene at the time that his consent to search was sought. As the traffic stop had not become a consensual encounter at the time that the officers requested the Defendant's permission to search, the reasoning of these cases is simply inapplicable to the present facts.

The fact that the traffic stop in the present case had not yet ended, however, does not mean that the officers were not justified in asking for consent to search the vehicle. At the point that the officers requested

permission to search, the Defendant was still lawfully detained for a traffic violation. It is well-established that an officer may seek consent to search during a lawful detention. Florida v. Royer, 460 U.S. 491, 501, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983); United States v. Boone, 245 F.3d 352, 362 (4th Cir. 2001). As the Supreme Court most recently held, "[a]n officer's inquiries into matters unrelated to the justification for the traffic stop . . . do not convert the encounter into something other than a lawful seizure, so long as those inquiries do not unreasonably extend the duration of the stop." Arizona v. Johnson, __ U.S. __, 129 S.Ct. 781, 788, 172 L.Ed.2d 694 (2009).

In the present case, a review of the MVR shows that Officer Flatt asked for the Defendant's consent to search approximately fourteen minutes into the stop, and that this exchange between Officer Flatt and the Defendant took only a few seconds. Because Officer Flatt's request for consent did not unreasonably extend the duration of the stop, the additional questioning of the Defendant for the limited purpose of seeking his consent to search the vehicle did not render his continued detention unlawful.

Having determined that the officers were justified in seeking the Defendant's consent during the course of the traffic stop, the Court now turns

to the issue of whether that consent was voluntary.  As the Supreme Court has stated:

> The Fourth Amendment does not proscribe all state-initiated searches and seizures; it merely proscribes those which are unreasonable.  Thus, we have long approved consensual searches because it is no doubt reasonable for the police to conduct a search once they have been permitted to do so.

Florida v. Jimeno, 500 U.S. 248, 250, 111 S.Ct. 1801, 114 L.Ed.2d 297 (1991) (citations omitted).  Whether consent was voluntarily given is a question of fact to be determined from the totality of the circumstances.  Schneckloth v. Bustamonte, 412 U.S. 218, 248-49, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973).  "Factors that are appropriate for the district court to consider include the characteristics of the accused (such as age, maturity, education, intelligence, and experience) and the conditions under which the consent to search was given (such as the officer's conduct, the number of officers present, and the duration of the encounter)."  Boone, 245 F.3d at 361-62.  The Government is not required to prove that the Defendant knew of his right to refuse consent in order to prove that his consent was voluntary.  See United States v. Lattimore, 87 F.3d 647, 650 (4th Cir. 1996).

The Magistrate Judge concluded that the stop did not become a consensual encounter because "a reasonable person in [the Defendant's]

position would not have felt free to leave or terminate the encounter." [Doc. 12 at 8].  Whether the Defendant felt free to leave, however, is not determinative of the issue of voluntariness.  Consent, even given while in custody, may still be considered voluntary.  See United States v. Watson, 423 U.S. 411, 424, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976) ("the fact of custody alone has never been enough in itself to demonstrate a coerced confession or consent to search"); Boone, 245 F.3d at 362 ("If an individual voluntarily consents to a search while justifiably detained on reasonable suspicion, the products of the search are admissible.").

Considering the totality of the circumstances, the Court concludes that the Defendant's consent to the search was voluntary.  The traffic stop occurred in the lot of a gas station next to a busy thoroughfare.  See Watson, 423 U.S. at 424 (finding consent voluntary where consent was "given while on a public street, not in the confines of the police station"); Boone, 245 F.3d at 363 (finding consent was voluntary where obtained in a public parking lot). None of the officers had their guns drawn, nor did they engage in any type of hostile, coercive or intimidating behavior.  See United States v. Brugal, 209 F.3d 353, 362 (4th Cir. 2000) (en banc) (finding consent to search was voluntary where there was no evidence to suggest that police used coercive

tactics to obtain consent). While the officers asked the Defendant to step out of the vehicle before asking his consent, this was not done in a hostile or intimidating manner.[2] The lack of coercion is further evidenced by the fact that the Defendant and the officers engaged in small talk while the search was being performed. Additionally, the Defendant was extremely cooperative during the search, and at one point even assisted the officers in opening the glove box. See Boone, 245 F.3d at 363 (finding consent voluntary where defendant engaged in small talk with the officers and cooperated with their search). Finally, there is no indication that the Defendant was inexperienced with law enforcement, mentally deficient or otherwise unable to exercise a free choice in the matter. See Watson, 423 U.S. at 424-25, 96 S.Ct. 820. Under these circumstances, the Court concludes that the Defendant's consent to the search of his vehicle was voluntarily given, and therefore, the search of the Defendant's vehicle did not violate the Fourth Amendment.

---

[2] The Defendant contends that the officers were not justified in asking the Defendant to step out of the vehicle at this point, because the traffic stop had already been completed. [Doc. 22 at 5-6]. This argument simply is not supported by the facts. Both Officer Flatt's testimony and the MVR footage establish Officer Flatt had not yet handed the Defendant his traffic citation at the time that he requested that the Defendant step out of the vehicle, and thus, the traffic stop was still ongoing. See Farrior, 535 F.3d at 218 (holding that traffic stop ended when license and registration returned, an oral warning was issued, and defendant was told that he was free to go). As such, the officers were justified in asking him to step out of the car. See Philadelphia v. Mimms, 434 U.S. 106, 111, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977).

**B.    The Defendant's Statements**

The Magistrate Judge concluded that the statements made by the Defendant should be suppressed as the fruit of an unconstitutional search and seizure.   For the reasons set forth above, however, the Court has concluded that the seizure of the Defendant and the subsequent search of the Defendant's vehicle were lawful, and therefore, the Defendant's statements are not subject to suppression on this basis.

As an alternative basis for the suppression of his statements, the Defendant argues that he did not receive <u>Miranda</u> warnings until the middle of his custodial interrogation, and therefore the statements that he made both before and after the warnings should be suppressed. [Doc. 7 at 9].   The Magistrate Judge did not address this alternative argument.

In <u>Miranda v. Arizona</u>, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the Supreme Court held that a suspect in custody "must be warned that he has a right to remain silent, that any statements he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed."   <u>Id.</u> at 444, 86 S.Ct. 1602. "A person is 'in custody' for purposes of <u>Miranda</u> either if the person has been arrested or if his freedom of action has been curtailed to a degree associated

with arrest." <u>Sullivan</u>, 138 F.3d at 130. Generally speaking, a person detained during a routine traffic stop is not "in custody" within the meaning of <u>Miranda,</u> and therefore, statements made to officers during the stop are admissible in evidence even in the absence of a <u>Miranda</u> warning. <u>Berkemer v. McCarty</u>, 468 U.S. 420, 440, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984). "Only if the motorist is detained to a degree associated with formal arrest will he be entitled to the <u>Miranda</u> protections for in-custody interrogations." <u>Sullivan</u>, 138 F.3d at 130 (internal quotation marks and citation omitted).

In the present case, Officer Flatt began interrogating the Defendant about the firearm while he was in the process of placing the Defendant under arrest. [Tr. at 12-13]. As such, the Defendant was "in custody" for the purposes of <u>Miranda</u> and was therefore entitled to the appropriate warnings before being subject to interrogation. Accordingly, the statements made by the Defendant in response to this questioning, including his statement regarding his status as a convicted felon, should be suppressed.

The Defendant also seeks suppression of the statements he made after the <u>Miranda</u> warnings were given, arguing that under <u>Missouri v. Seibert</u>, 542 U.S. 600, 124 S.Ct. 2601, 159 L.Ed.2d 643 (2004) (plurality opinion), "simply giving <u>Miranda</u> warnings in the middle of an interrogation is insufficient to

23

render admissible the statements given after the <u>Miranda</u> warnings." [Doc. 7 at 9].

In <u>Oregon v. Elstad</u>, the Supreme Court held that "[a] subsequent administration of <u>Miranda</u> warnings to a suspect who has given a voluntary but unwarned statement ordinarily should suffice to remove the conditions that precluded admission of the earlier statement." 470 U.S. 298, 314, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985). As the Court noted:

> It is an unwarranted extension of <u>Miranda</u> to hold that a simple failure to administer the warnings, unaccompanied by any actual coercion or other circumstances calculated to undermine the suspect's ability to exercise his free will, so taints the investigatory process that a subsequent voluntary and informed waiver is ineffective for some indeterminate period. Though <u>Miranda</u> requires that the unwarned admission must be suppressed, the admissibility of any subsequent [warned] statement should turn . . . solely on whether it is knowingly and voluntarily made.

<u>Id.</u> at 309, 105 S.Ct. 1285.

In <u>Missouri v. Seibert</u>, the Supreme Court addressed the admissibility of statements obtained by a two-step questioning process, whereby the police (1) intentionally withheld <u>Miranda</u> warnings from a suspect and questioned her until she confessed, and then (2) obtained a <u>Miranda</u> rights waiver from the suspect and covered the same material using leading questions. 542 U.S.

600, 605-06, 124 S.Ct. 2601, 159 L.Ed.2d 643 (2004) (plurality opinion). In

Seibert, a plurality of four justices held that the statements elicited after the

Miranda warnings were inadmissible. Id. at 617, 124 S.Ct. 2601. Specifically,

the plurality opined that the admissibility of the warned statements depended

"on whether Miranda warnings delivered midstream could be effective enough

to accomplish their object," considering

> the completeness and detail of the questions and
> answers in the first round of interrogation, the
> overlapping content of the first two statements, the
> timing and setting of the first and the second, the
> continuity of police personnel, and the degree to
> which the interrogator's questions treated the second
> round as continuous with the first.

Id. at 615, 124 S.Ct. 2601. Justice Kennedy concurred in the judgment but

noted that the plurality's multi-factor test "cuts too broadly," as it applies to

cases involving both intentional and unintentional two-stage interrogations.

Id. at 621, 124 S.Ct. 2601 (Kennedy, J., concurring in the judgment). Justice

Kennedy concluded that Elstad should continue to govern the admissibility of

postwarning statements unless a two-step questioning strategy was

deliberately used. Id. at 622, 124 S.Ct. 2601.

Because Seibert is a plurality opinion, "the holding of the Court may be

viewed as that position taken by those Members who concurred in the

judgments on the narrowest grounds." United States v. Mashburn, 406 F.3d 303, 308 (4th Cir. 2005) (quoting Marks v. United States, 430 U.S. 188, 193, 97 S.Ct. 990, 51 L.Ed.2d 260 1977)).  As Justice Kennedy's concurring opinion sets forth the narrowest grounds for the Court's holding, his opinion represents the holding in Seibert.  Mashburn, 406 F.3d at 309.  Thus, "[t]he admissibility of postwarning statements is governed by Elstad unless the deliberate 'question-first' strategy  is employed."  Id. (footnote omitted).

In the present case, there is no evidence that the officers' failure to administer Miranda warnings was deliberate or intentional.  Nor is there any evidence to suggest that the Defendant's prewarning statements were deliberately elicited by coercion or other improper tactics.  Thus, the admissibility of the Defendant's postwarning statements is governed by the rule set forth in Elstad that "absent deliberately coercive or improper tactics in obtaining the initial statement, the mere fact that a suspect has made an unwarned admission does not warrant a presumption of compulsion as to any subsequent, post-warning statement."  Mashburn, 406 F.3d at 309 (quoting Elstad, 470 U.S. at 314, 105 S.Ct. 1285) (internal quotation marks omitted).  The Defendant's argument that his postwarning statements should be suppressed under Seibert must therefore be rejected.

## V. CONCLUSION

For the reasons stated herein, the Court concludes that the Defendant's consent to the search of his vehicle was voluntarily given, and therefore, the search of the Defendant's vehicle did not violate the Fourth Amendment. The Court further concludes that the Defendant's prewarning statements made in response to police questioning while he was being handcuffed should be suppressed, but his subsequent postwarning statements are admissible under Elstad.

Accordingly, **IT IS, THEREFORE, ORDERED** that the Recommendation [Doc. 12] of the Magistrate Judge that the Defendant's Motion to Suppress [Doc. 7] be granted is **REJECTED**, and the Government's Objections to the Magistrate Judge's Memorandum and Recommendation [Doc. 17] are **SUSTAINED.**

**IT IS FURTHER ORDERED** that the Defendant's Motion to Suppress [Doc. 7] is **GRANTED** to the extent that the Defendant's inculpatory statements elicited in violation of Miranda are suppressed. In all other respects, the Defendant's Motion to Suppress [Doc. 7] is **DENIED**.

**IT IS FURTHER ORDERED** that the Government's Motion for Leave to File Opposition to Suppression M&R [Doc. 23] is **GRANTED**, and the

Defendant's Motion to Strike Government's Objection to Memorandum & Recommendation [Doc. 21] is **DENIED**.

      **IT IS FURTHER ORDERED** that attorney C. Nicks Williams shall enroll in an ECF refresher course through the Clerk of the Court for the Western District of North Carolina and certify the completion of such course to the Court within sixty (60) days of the entry of this Order.

      **IT IS SO ORDERED.**

Signed: July 6, 2009

Martin Reidinger
United States District Judge